**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF OHIO**

**WESTERN DIVISION AT DAYTON**

**BUCKHORN INC.,**

      Plaintiff,

                                     Case No. 3:08-CV-00459

-vs-

                                     Judge Thomas M. Rose

**ORBIS CORPORATION,**

**ORBIS MATERIAL HANDLING, INC., and**

**DOES 1 through 6,**

      Defendants.

---

**ENTRY AND ORDER OVERRULING ORBIS CORPORATION, ORBIS MATERIAL HANDLING, INC., AND DOES 1 THROUGH 6'S MOTION TO DISMISS (DOC #12) AND GRANTING BUCKHORN, INC.'S IN THE ALTERNATIVE MOTION TO JOIN PATENT OWNER (DOC #13).**

---

This is an action brought by Buckhorn, Inc. alleging that Orbis Corporation and Orbis Material Handling, Inc. made or sold certain containers which infringe on 5,199,592 Patent, titled "Container with Latchable Hinged Sidewall Gate." Additionally, Buckhorn alleges that Does 1 through 3 engaged in the sale of infringing products with Orbis and Orbis Material

Handling, Inc. and, similarly, that Does 4 through 6 contributed, induced, or engaged in the sale of infringing products with Orbis and Orbis Material Handling, Inc.

On December 12, 2008 the Plaintiff filed the Complaint (Doc #1) against the Defendants. Subsequently, the Defendants filed a Motion to Dismiss (Doc #12), on April 28, 2009, pursuant to Fed. R. Civ. P. 12(b)(1) asserting that the Plaintiff lacked standing to sue. The Plaintiff filed a response opposing the Defendants' Motion to Dismiss Or In the Alternative Motion to Join Patent Owner along with several exhibits (Doc #13), on May 22, 2009. The Defendant replied on June 9, 2009 (Doc #15). Accordingly, the parties' motions are ripe for consideration.

Now before the Court are the Defendants' Motion to Dismiss and the Plaintiff's In the Alternative Motion to Join the Patent Owner. As such, the Court will first set forth the relevant background followed by an analysis of standing and the Parties' respective motions.

**BACKGROUND**

In a Rule 12(b)(1) motion for lack of subject matter jurisdiction in which evidence beyond the complaint is before the court, the court is empowered to resolve factual disputes in order to determine if jurisdiction is proper. *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996). Accordingly, the following factual background is based upon information in the complaint as well as exhibits filed with the Court.

The 5,199,592 patent ("'592 patent"), titled "Container with Latchable Hinged Sidewall Gate," was issued on April 6, 1993 to Perstorp Extec, Inc. (Compl., Ex. 1 at 3.) After a series of assignments Schoeller Arca Systems, Inc. ("Schoeller") was assigned '592 patent on May 3,

2007. (Ex. A at 2.) Schoeller later licensed '592 patent to Myers Industries, Inc. ("Myers"). (Ex. 1.) This license was controlled by the Patent License Agreement ("PLA") between the Buyer, Myers, and the Seller, Schoeller, dated March 7, 2007. (Ex. 1.)

The relevant rights granted to Myers under the PLA are as follows;

(2.01) **License Grant**. Subject to the terms and conditions of this Agreement and Section 6.1 of the Asset Purchase Agreement, Seller hereby grants to Buyer (i) a fully paid-up, royalty free, non-transferable (except as set forth in Section 7.01) co-exclusive license under the Licensed Patents, solely within the Territory, to make, use, have made, import, offer for sale, sell and/or otherwise transfer the Licensed Products, and (ii) a fully paid up, non-transferable (except as set forth in Section 7.01) royalty free, perpetual, non-exclusive license under the Knew-How, solely within the Territory, to make, use, have made, import, offer for sale, sell and/or otherwise transfer the Licensed Products. For the avoidance of doubt, no license or right is granted to Buyer outside of the Territory or with respect to any products other than the Licensed Products.

(3.02) **Process for Asserting Patents.** In the event that Seller or Buyer becomes aware of actual or threatened infringement of a Licensed Patent in the Territory, that party shall promptly notify the other party in writing. Seller shall have the first right but not the obligation, at its own expense, to bring an infringement action against any third party infringer. If Seller does commence a particular infringement action, then Buyer, at its own expense, shall be entitled to fully participate in such action. If Buyer participates in such action, Seller and Buyer shall assist one another and cooperate in any such litigation. Seller shall have the right to control the conduct of the litigation, including settlement thereof, except that Seller shall not enter into any settlement that affects Buyer's rights or interests without Buyer's prior written approval, such approval not to be unreasonably withheld or delayed. If Seller does not commence a particular infringement action within a reasonable period of time, then Buyer, after notifying Seller in writing, shall be entitled to bring an infringement action at its own expense and to use Seller's name in connection therewith. Seller shall have the right, at its own expense, to fully participate in all aspects of the litigation. Buyer and Seller shall assist one another and cooperate in any such litigation. Buyer shall have the right to control the conduct of the litigation, including settlement thereof and shall conduct the litigation taking into consideration the strategic business interests of Seller, except that Buyer shall not enter into any settlement that affects Seller's rights or interest without Seller's prior written approval, such approval not to be unreasonably withheld or delayed.

> (7.01) **Assignment**. Neither this Agreement nor any of rights or obligations hereunder may be assigned by either party without the other party's prior written consent, and any attempt to do so shall be void; provided, however, that either party may assign this Agreement and its rights and obligations hereunder to (i) a Subsidiary, or (ii) the purchaser of all or substantially all of its assets related to the Licensed Products, or to its successor entity or acquirer in the event of a merger, consolidation or change in control of Buyer."

(Ex. 1, PLA; 2:2.01, 2:3.02, 4:7.01)

Buckhorn, Inc. ("Buckhorn") is a wholly-owned subsidiary of Myers. (Mr. Kenneth J. Contrera Declaration, Ex. 4 Enclosure 1, May 21, 2009 ("Contrera Decl."), 2: ¶ 4). Buckhorn manufactures and sells reusable packaging products as well as programs for industrial manufacturing, processing, and other commercial operations. (Compl. ¶ 11.) Additionally, Buckhorn is the entity within Myers responsible for the technology and products protected by '592 patent. (Contrera Decl. 2: ¶ 5.) As such, Buckhorn states that it was transferred "full rights to and under the Patent License Agreement [PLA]" by Myers as permitted by the PLA. (Id.)

The named Defendants, Orbis Corporation ("Orbis") and Orbis Material Handling, Inc. ("Orbis/LinPac"), manufacture and sell reusable plastic containers for use in industrial material handling including automotive components, bearings, hardware, industrial equipment, metal parts, plastics and rubber, resigns and powders, and tools. (Compl. 4:¶ 12.) Additionally, the unnamed Defendants, Does 1 through 6 are business entities which are alleged to reside and/or conduct business in this judicial district. (Id. at 2:¶ 6-3:¶ 7.) Does 1 through 3 are alleged to have directly engaged in the sale of infringing products as alleged partners, business associates, collaborators, or suppliers to Orbis and/or Orbis/LinPac. (Id. at 2:¶ 6.) Buckhorn also alleges that Does 4 through 6 have directly and personally contributed, induced, and engaged in the sale of

infringing products as alleged partners, business associates, collaborators, or suppliers to Orbis and/or Orbis/LinPac. (Id. at 3:¶ 7.)

## ANALYSIS

### A. SUBJECT MATTER JURISDICTION

Standing to sue is one of the most fundamental constitutional jurisdictional doctrines, which ensures that the federal court has authority to hear the issue before it. *United States v. Hays*, 515 U.S. 737, 742 (1995). Without standing this Court has no jurisdiction to adjudicate the pending motions. As a result, the Court will first analyze Buckhorn's standing in this matter. The Court will begin with a categorization of Buckhorn's property rights and then discuss Buckhorn's standing.

#### 1. Buckhorn's Property rights

In order to determine the nature of a transfer of patent rights the Court must determine the intent of the parties and examine the substance of the transfer. *Vaupel Textilmaschinen KG v. Meccanico Euro Italia SPA*, 944 F.2d 870, 874 (Fed. Cir. 1991). Moreover, this analysis should focus on what was conveyed and reserved by the original owner. *Morrow v. Microsoft*, 499 F.3d 1332, 1336 (Fed. Cir. 2007). Additionally, the Federal Circuit has explained that there are three categories of patent rights; a holder of all substantial rights to a patent, an exclusive license, and a nonexclusive license.

A transfer in which the patent owner retained the right to veto sublicenses, the right to patent the invention in other countries, the reversionary right to the patent in case of bankruptcy, and the right to any damages from infringement litigation was held to be a transfer of all

substantial rights to a patent. *Vaupel*, 944 F.2d 870, 874-75 (Fed. Cir. 1991). In *Vaupel* the plaintiff had been transferred all rights to make, have made, use, sell, lease, rebuild, and sue for patent infringement for '650 patent. The court held "particularly dispositive" the transfer of the right to sue for patent infringement with the requirement that the plaintiff notify the patent owner of such litigation to its conclusion that the plaintiff held all substantial rights. *Id* at 875.

On the other hand, a transfer in which the patent owner retained the right to make and sell the patented invention to pre-existing customers, the right to veto assignments of the transferee, and the right to initiate infringement litigation if the transferee declines to do so was held to be an exclusive license. *Abbott Laboratories v. Diamedix Corp.*, 47 F.3d 1128, 1132 (Fed. Cir. 1995). The plaintiff in *Abbott* was granted an exclusive world-wide license to make, produce, and sell the patented invention subject to the rights previously granted to the defendant's other licensees and the right to initiate patent infringement litigation on its own but could not indulge an infringement, a right associated with a complete assignment. The Federal Circuit has held a transferee must receive an express or implied promise from the patentee to exclude others from making or selling patented inventions in order to hold an exclusive license. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1552 (Fed. Cir.) (citing *Indep. Wireless Telegraph Co. v. Radio Corp. of America*, 269 U.S. 459, 468-69 (1926)). However, the Court has also found that a limitation on the transferee's assignment rights weighs heavily in favor of a grant of less than all substantial rights. *Abbott Laboratories,* 47 F.3d 1128, 1132 (Fed. Cir. 1995). As a result, the Court found that the plaintiff had not received all substantial rights because it was not given the exclusive right to sue for patent infringement and could not freely assign its rights. *Id*.

However, a transfer of patent rights that is silent on whether or not the patent owner retains the right to grant other licenses to the patented inventions in the area of exclusivity grants a nonexclusive license. *Textile Productions, Inc. v. Mead Corp.*, 134 F.3d 14811, 1484-85 (Fed. Cir. 1998). The court in *Textile* found that when a contract conferring patent rights was silent on the issue of further licensing the court must assume that the patent owner reserved the right to grant additional licenses. Therefore, in retaining this right the defendant, the patent owner, had not transferred any rights beyond a mere license to the plaintiff. *Id*.

In the present case Myers was transferred a co-exclusive license to make, use, have made, import, offer for sale, sell and/or otherwise transfer the Licensed Products. Schoeller retained the right to refuse possible assignments by Myers and the right of first refusal to any future infringement litigation. However, once Schoeller refused to initiate possible infringement litigation Myers had the right, within a reasonable period of time, "to bring an infringement action at its own expense and to use Seller's [Schoeller's] name in connection therewith." (Ex. 1 2:¶ 3.02.) Thus, Myers was not transferred all substantial rights as it was not given the exclusive right to sue for patent infringement but had to, first, wait for Schoeller to refuse before it could initiate such litigation. Moreover, Myers was not given the right to freely assign its rights as Scheoller retained the right to veto any assignment by Myers. In contrast, Myers was given more than a nonexclusive license because the contract grated a co-exclusive license and promised Myers that either Schoeller would sue any infringer of the patented invention or assist Myers in any such suit. Consequently, Myers was transferred an exclusive license as Schoeller transferred a promise to exclude others from utilizing the patented invention by suing for Myers, with Myers, or allowing Myers to bring suit individually using Schoeller's name.

7

The exclusive license transferred to Myers was later transferred to Buckhorn. This is evidenced by Buckhorn's statement that it was transferred all rights to and under the PLA by Myers. The Court finds that this statement is sufficient to survive a motion to dismiss. As a result, Buckhorn now stands in the place of Myers as the exclusive licensee to '592 patent.

Therefore, Buckhorn is the exclusive licensee to '592 patent as Buckhorn has sufficiently pled that it was transferred all rights to and under the PLA by Myers and that this transfer included the promise to exclude others from utilizing the patented invention.

## 2. STANDING

The Federal Circuit has held that the three general categories patent rights establish respective categories of standing; the holder of all substantial rights to a patent can sue in their own name, an exclusive license holder can sue along with the patent owner, and a nonexclusive license holder cannot be a party to the suit. *Morrow*, 499 F.3d at 1339 (Fed. Cir. 2007). As Buckhorn is an exclusive licensee the following analysis will be limited to the standing possessed by an exclusive license holder.

Standing in patent infringement cases is derived from 35 U.S.C. § 281 ("the Patent Act"). The Patent Act states, "A patentee shall have remedy by civil action for infringement of his patent." A patentee includes "not only the patentee to whom the patent was issued but also the successors in title to the patent." 35 U.S.C. § 100(d) (1994). Furthermore, a grant of all substantial rights in a patent has been considered an assignment or transfer of title in the patent, conferring constitutional standing to the assignee or transferee to sue in its own name for patent

infringement. *Intellectual Prop. Dev. v. TCI Cablevision of California, Inc.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001).

However, the Federal Circuit has held that the statutory language of the Patent Act does not limit standing to patentees or holders of all substantial rights. *Id*. at 1346. Rather, courts have recognized two thresholds of standing in patent infringement cases; a constitutional minimum and a judicially imposed prudential rule.

The Supreme Court has established three elements necessary in order to establish constitutional standing,

> "First, the plaintiff must have suffered an 'injury in fact'-an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of.... Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Hays*, 515 U.S. 737, 742-43 (1995) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Prudential standing, on the other hand, was established in *Independent Wireless Telegraph Co.*, 269 U.S. 459 (1926), and has been recognized as the "principle that a patent owner should be joined, either voluntarily or involuntarily, in any patent infringement suit brought by an exclusive licensee having fewer than all substantial patent rights." *Intellectual Prop. Dev. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1348 (Fed. Cir. 2001) (citing *Prima Tek II, L.L.C v. A-Roo Co.,* 222 F.3d 1372, 1377 (Fed. Cir. 2000); *Rite-Hite v. Kelley Co., Inc.,* 56 F.3d 1538, 1552 (Fed. Cir. 1995); *Mentor H/S, Inc. v. Medical Device Alliance, Inc.,* 240 F.3d 1016, 1017 (Fed. Cir. 2001); *Textile Productions,* 134 F.3d 1481, 1484 (Fed. Cir. 1998).

For example, the court in *Intellectual Prop. Dev.* held that an exclusive licensee met the constitutional requirements of standing for patent infringement to bring a motion to join the patent owner. *Id*. at 1347. The plaintiff in *Intellectual Prop. Dev.* had been transferred an exclusive license to certain wire broadcasting systems which were allegedly infringed upon by the defendant. The plaintiff brought suit individually and later moved to join the patent owner. In examining the plaintiff's standing the court concluded that as an exclusive licensee the plaintiff had sustained an injury that was directly related to the alleged infringement, met the "fairly traceable" standard of causation, and was redressable to the court. As a result, the court held that the plaintiff had constitutional standing, under *Lujan*, sufficient to amend its complaint to join the patent owner. *Id*.

In the present case, Buckhorn holds an exclusive license to '592 patent. As an exclusive licensee Buckhorn's injury was directly related to the alleged infringement, which is fairly traceable to the Defendants' alleged conduct, and is redressable by this Court. *See Id*. at 1348. As such, this Court finds that the alleged infringement by the Defendants meets the standards set forth in *Lujan*. Consequently, Buckhorn has constitutional standing sufficient for this Court to adjudicate motions but has not established prudential standing as the patent owner has not been joined.

Therefore, this Court has jurisdiction to adjudicate the pending motions as Buckhorn has constitutional standing as an exclusive licensee.

### B.  MOTION TO DISMISS

The Defendants, through their Motion to Dismiss, contend that the Plaintiff lacks standing to sue for patent infringement on two grounds. First, that even if Buckhorn has the rights transferred to Myers by Schoeller it still lacks standing because Schoeller did not transfer an exclusive license to all substantial rights to the patent. Second, that Buckhorn does not have standing to sue as there is no record of its patent rights. The Plaintiff contends, however, that Myers holds all substantial rights to '592 patent and that all of these rights were later transferred to Buckhorn.

As previously discussed Myers was transferred an exclusive license, a conveyance of less than all substantial rights, by Schoeller, this exclusive license has been sufficiently plead to have been transferred to Buckhorn making Buckhorn the exclusive licensee to '592 patent, and as an exclusive licensee bringing this suit individually Buckhorn possesses constitutional standing but not prudential standing. Consequently, the patent owner, Schoeller, must be joined for this Court to fully adjudicate this matter.

Therefore, the Court overrules the Defendants' Motion to Dismiss with leave to refile after the 60 day term given to Plaintiff to join the patent owner, discussed below, has expired without such joinder.

### C. MOTION IN THE ALTERNATIVE TO JOIN PATENT OWNER

In response to the Defendants' Motion to Dismiss the Plaintiff also filed an In the Alternative Motion to Join Patent Owner. Through this Motion Buckhorn requests leave of the Court to join the patent owner, Schoeller, to this action. As previously stated Buckhorn, individually, possesses constitutional standing but has not met the prudential requirement that an

exclusive licensee must join the patent owner to have proper standing. *See Intellectual Prop. Dev.*, 248 F.3d at 1348 (Fed. Cir. 2001); *Independent Wireless*, 269 U.S. 459 (1926).

Pursuant to this prudential rule the Court grants Buckhorn's Alternative Motion to Join the Patent Owner with the understanding that the patent owner must be joined within 60 days or this case will be subject to dismissal.

## CONCLUSION

Therefore, Orbis, Orbis/LinPac, and Does 1 through 6's Motion to Dismiss is overruled with leave to refile after the 60 day term given to Plaintiff to join the patent owner has expired without such joinder and grants Buckhorn's In the Alternative Motion to Join the Patent Owner with the understanding that the patent owner must be joined within 60 days or this case will be subject to dismissal.

**DONE** and **ORDERED** in Dayton, Ohio, this Twenty-First day of July, 2009.

s/Thomas M. Rose

_____

THOMAS M. ROSE

UNITED STATES DISTRICT JUDGE